## WAYNE CO. v. ANCHOR OIL CO.
### No. 601.

District Court, N. D. Indiana, South Bend Division.

June 29, 1937.

Seebirt, Oare, Deahl & Omacht, of South Bend, Ind., and Wilkinson, Huxley, Byron & Knight, of Chicago, Ill., for plaintiff.

George I. Haight, of Chicago, Ill., for defendant.

SLICK, District Judge.

Suit by plaintiff, an Indiana corporation, for infringement against defendant, also an Indiana corporation. It is charged that defendant Anchor Oil Company is an infringing user. Originally, the Milwaukee Pump & Tanks Works, Inc., was also a defendant. The Anchor Oil Company purchased the accused device from the Milwaukee Pump & Tanks Works, Inc. The bill was dismissed as to the Milwaukee Pump & Tanks Works, Inc., leaving only one defendant, the Anchor Oil Company. At the trial, counsel for defendant stated that they represented the Neptune Meter Company of New York City, which was, with the knowledge of the plaintiff, assuming and conducting the defense and paying the cost thereof.

The Neptune Meter Company manufactures certain parts which it sells to the Milwaukee Pump & Tanks Works, Inc., which in turn made the complete accused device and sold it to the Anchor Oil Company.

Plaintiff's title to the patent in suit is admitted. The patent is Jauch et al. No. 1,888,533, and plaintiff relies on claims 1, 2, 16, 17, 18, 19, and 22. Defendant denies validity of the patent in suit and infringement. The patent is for a liquid dispensing apparatus, commonly known as a gasoline pump, which measures and dispenses gasoline at filling stations. The claims relied upon are quite similarly worded, and any one of the claims may be used as a fair illustration of them all. Claim 1 reads as follows: "In liquid dispensing apparatus, the combination of a source of liquid supply, a pump the suction side of which is connected to said source, a meter connected to the outlet side of said pump and connected to dispensing means, and registering means operated by said meter for registering the amount of liquid dispensed and the cost of said liquid, and means for selectively changing the relation between the cost operating portion of said registering means and the amount operating portion thereof whereby the unit cost per unit amount dispensed may be varied."

It will be noted that the claim specifies a combination of: (1) A source of liquid supply. (2) A pump, the suction side of which is connected to said source of liquid supply. (3) A meter. (4) A registering means operated by said meter for registering the liquid dispensed and the cost thereof. (5) Means for changing the relation between the cost operating portion and the amount operating portion whereby the unit cost per unit amount dispensed may be varied.

This last mechanism is called a "speed variator" in claims 16 to 19, inc., and in claim 22.

The accused device has: (1) A source of liquid supply. (2) A pump, the suction side of which is connected to said source of supply. (3) A meter. (4) A register operated by said meter for registering the amount of liquid dispensed, and the cost thereof. (5) A cost or speed variator for changing or variating the cost per unit as the cost price per gallon varies.

Defendant in its answers to interrogatories 1 to 12, inc., admits that its accused device contains the elements in Nos. 1 to 4, inc., above, and in the testimony of its own engineer and expert, Mr. Hazard, admits that its device has a speed variator. (Record pages 156 and 157.)

We have then a complete infringement according to defendant's own admission.

The only question left is the validity of plaintiff's patent. Defendant claims there is no patentable invention in plaintiff's patent as exemplified by its device; that it is a mere aggregation of old and well known parts, to wit, a supply of liquid, a pump, a meter, a registering device, and a price changing device, all old in and well known to the prior art, and all so simple that any reasonably capable mechanic could have put them together without the aid of and knowledge gained through the Jauch et al. patent.

Defendant cites the prior art to demonstrate the alleged invalidity of plaintiff's patent, and cites the Quick patent No. 1,-266,527, which is a device containing a meter for measuring and indicating the cost of illuminating gas, Lowne British patent No. 29,692, also a device for measuring illuminating gas, and Harness patent No. 1,-439,163, issued on a device for a printing attachment to a liquid dispensing hand operating pump. Defendant also cites Deutschbein patent No. 353,781, which defendant's expert admits does not anticipate, and Carroll patent No. 1,940,656, which was practically abandoned at the trial as having no value as an anticipation. The Carroll patent discloses a different type meter and no speed variator, and the meter does not drive or operate any registering means. Carroll's registering or printing means is operated or driven by a spring, a separate source of power. Defendant's expert engineer testified at the trial that, if neither Quick, nor Lowne nor Harness anticipate plaintiff's device, then there are no references that do anticipate the claims in suit. (Record page 252.)

The patents cited by defendant as anticipations are the Quick, Lowne and Harness patents, Quick and Lowne issued in a different field of endeavor, for measuring illuminating gas, and have no relation whatever to measuring and dispensing gasoline or other liquid materials. It is hard to conceive how a meter for measuring illuminating gas can be an anticipation for the modern gasoline dispensing pump used in the common filling stations. A patent on a spade would not be considered infringed

by a modern gang plow. A patented tallow candle is not infringed by an electric light bulb. These are extreme analogies, but what possible connection is there between a machine containing a meter for measuring illuminating gas and a gasoline dispensing pump such as is used in the ordinary filling station? They both contain meters. That is practically the only similarity.

Each claim in the Jauch et al. patent begins with the phrase "in liquid dispensing apparatus." The patent is for a gasoline pump for use at a filling station, and covers an entirely new combination of old elements coacting to produce a novel and very useful result, to wit, the delivery of any desired amount in gallons or fractions thereof of gasoline, or any desired amount in dollars and cents, whichever the customer desires, and, at the same time, to visibly register, for the benefit of the customer, the gallonage and the price. The customer may call for a designated amount in gallons, or he may order a dollar's worth and get the exact amount his money will purchase at the current price, and see for himself the exact gallonage received, and the exact amount in dollars and cents it costs.

The Harness patent, among other things, is lacking in an essential and important element of the combination; namely, a meter, in addition to a pump. Defendant's own engineering expert admitted that the meter and the pump were both essential and each performed its necessary function in the combination to obtain accurate and efficient results.

The advantages of this combination are too numerous to relate here. The device, when put upon the market, had an immediate demand at an advanced price. The record is replete with testimony showing its great popularity. The Neptune Meter Company was quick to recognize this and copied plaintiff's device in all its parts. The highest tribute that could be paid plaintiff's device is its complete infringement by the Neptune Company and the Milwaukee Pump & Tanks Works Company. As was said in U. S. Ozone Company v. U. S. Ozone Company of America (C.C.A.) 62 F.(2d) 881, 889: "Its merit is further attested by appellants' effort, as shown by the evidence, to evade infringement of the patent and at the same time appropriate its substance."

The language of Judge Hough in Kurtz v. Belle Hat Lining Co. (C.C.A.) 280 F. 277, 281, is especially appropriate to the case at bar. "The imitation of a thing patented by a defendant, who denies invention, has often been regarded * * * as conclusive evidence, of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think."

The patent is presumed to be valid until the contrary appears by convincing evidence. The public adopted and now demands it. It came at a time when the field was crowded and a great financial depression was at its height. It was instantly popular. Competitors of the plaintiff have taken out licenses and pay substantial royalties. The Neptune Meter Company, who are making this defense, are now engaged in copying it. It (the Neptune Company) pays tribute to the great value of this invention by infringing it, but gives all the credit of invention to the prior art.

Novelty of invention is not negatived by the antiquity of the parts combined. The parts may all be old, but, if arranged in a new combination so that the parts coact to produce a new and useful result, there is patentable invention. In such case the "whole is different from the sum of all its parts."

The Jauch et al. patent is for a device or combination designed for a definite purpose. None of the prior patents relied on to defeat it was designed to produce the same result. They were in an entirely different field of operation or endeavor, and have no relation to the object or purpose of the patent infringed.

The result of the device produced by plaintiff following the Jauch et al. patent is a gasoline purveying or dispensing machine at which the purchaser may buy gasoline on a dollar and cents' basis or on a gallonage basis, seeing at a glance the total cost to him and the amount of gallons he receives. He can drive into a station and have his tank filled up, or he can buy any amount he desires, stipulating the amount in gallons or the amount he desires to spend. The machine calculates and automatically discloses to his vision the gallons he has received and the amount of money it has cost him. Mistakes are eliminated. Calculations are dispensed with. Fire hazards are decreased, there being no necessity for overflowing the gasoline; it increases the number of sales and the gallonage dispensed. Ten of plaintiff's active competitors have taken out licenses at substantial royalties. The public has adopted

and demands this machine, all of which, if there were any doubt in the court's mind as to its validity, would tend to show invention.

Plaintiff's patent is valid and infringed by the accused device. The Neptune Meter Company is a contributory infringer along with the defendant Anchor Oil Company.